UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LAUREN M. JONES, <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | CAUSE NO.: 2:20-CV-370-TLS-JPK |

**OPINION AND ORDER**

The Plaintiff Lauren M. Jones seeks review of the final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits and supplemental security income. The Plaintiff argues that the Administrative Law Judge (ALJ) failed to properly weigh the opinion evidence and failed to properly evaluate her subjective complaints. For the reasons set forth below, the Court finds that reversal and remand for further proceedings is required.

**PROCEDURAL BACKGROUND**

On September 7, 2017, the Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on December 31, 2014. AR 18, ECF No. 15. She subsequently amended the onset date to March 6, 2018. AR 250. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on April 22, 2019. AR 18, 36. On July 29, 2019, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 18–28. The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 4–6. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d

492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On October 14, 2020, the Plaintiff filed a Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 19, 22, 25.

## THE ALJ'S DECISION

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[1] To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since March 6, 2018, the amended alleged onset date. AR 18, 20. At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, bilateral sacroiliitis with mild

---

[1] The Court cites the disability insurance benefits statutes and regulations, which are largely identical to those applicable to supplemental security income. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

bilateral SI joint arthrosis, psoriatic arthritis noted in November 2017, major depressive disorder with bipolar disorder, and adjustment disorder with mixed anxiety and depressed mood. AR 21.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 [to subpart P of part 404 of this chapter]." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing. AR 21–23.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; no more than occasional exposure to hazards such as dangerous moving machinery and unprotected heights; . . . frequent use of the bilateral upper extremities to reach, handle, finger, and feel; no more than occasional exposure to extreme heat and cold, humidity, dusts, odors, gases, poor ventilation; no more than occasional exposure to loud noise as defined by the Selected Characteristics of Occupations (SCO); and no commercial driving.

AR 23.[2]

---

[2] Because the Plaintiff challenges only the ALJ's physical RFC findings, the Court does not include the analysis of the Plaintiff's mental impairments.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff is unable to perform any past relevant work. AR 26. If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of cleaner, housekeeping, mail clerk, document preparer, addresser, and circuit board assembler. AR 27–28. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, the Plaintiff argues that the ALJ erred by failing to properly evaluate the opinion evidence of her treating rheumatologist and the state agency reviewing physicians and by not properly considering her subjective symptoms. The Court finds that remand is required to properly consider the opinion evidence related to the Plaintiff's diagnosis of psoriatic arthritis.

A.   **The Plaintiff's Relevant Physical Medical History**

In May and June 2014, the Plaintiff was seen in the emergency room for back pain. AR 432, 434, 452, 454. In January 2017, the Plaintiff was seen by Dr. Gupta for pain management

following a motor vehicle accident in December 2016. AR 356–57. Dr. Gupta's impression was bilateral sacroiliitis; facet joint arthropathy, lumbar region; herniated disc at L4–5; and retrolisthesis L3–4. AR 357. It was also discovered that the Plaintiff had a benign neoplasm of cerebral meninges. AR 597, 601. In October 2017, the Plaintiff reported increased headaches since the accident and that she had suffered an episode of falling down with shaking of the legs. AR 631–32. An October 25, 2017 EEG was unremarkable. AR 632.

In November 2017, the Plaintiff's medical records included a history of psoriasis with an examination finding of erythematous small patches and plaques on the bilateral hands and knuckles. AR 667, 675. On December 1, 2017, the Plaintiff began pain management for low back pain that was better with lying down. AR 613–16. On physical examination, the Plaintiff ambulated with difficulty and exhibited "guarding and antalgic behavior." AR 615. She exhibited severe pain in the lumbar spine and positive straight leg raising bilaterally. *Id.* She had 5/5 strength in all extremities, including grip strength. *Id.* The Plaintiff treated for cervical, thoracic, and lumbar pain. AR 616.

At a follow up visit with her general practitioner on December 7, 2017, the Plaintiff was treated for psoriasis with chronic low back pain, pain in joints at multiple sites, and a positive ANA result. AR 679. She had psoriasis on her hands, elbows, knuckles, and scalp. AR 684. On review of symptoms, she was positive for arthralgias and back pain but negative for joint swelling and she denied numbness, weakness, or tingling of the lower extremities. *Id.* On musculoskeletal examination, she had decreased range of motion, tenderness, and spasm in her lumbar back. AR 685. On examination of the skin, she had erythematous plaque lesions on the extensor surfaces of elbows, erythematous patches noted on bilateral dorsal aspect of hands and knuckles (improved), and multiple dry, scaly, and erythematous patches on the scalp. *Id.* The

6

assessment included psoriasis, chronic bilateral low back pain with sciatica, positive ANA, and pain in joint, multiple sites. AR 686. The Plaintiff was referred to a rheumatologist because her bloodwork was significant for positive ANA and elevated ESR. AR 684–85.

On January 19, 2018, the Plaintiff first met with a rheumatologist, Dr. Ahmad Salah. AR 726–27. She complained of diffuse joint pain (predominately back, hips, buttocks), fatigue and an inability unable to sleep, psoriasis, and hands that cramp and get stiff. AR 726, 728. On physical examination, she had pain with flexion of the hips and small psoriatic pustular/plaque lesions on the elbows and scalp. AR 730. Dr. Salah's assessment was positive ANA and psoriasis and further testing was ordered. AR 727, 733.

In February 2018, the Plaintiff's general practitioner prescribed Lyrica for pain radiating to the lateral aspect of the hips and down lateral aspect of the lower extremities. AR 699–701. On examination, the Plaintiff had decreased range of motion, decreased strength, and tenderness in both hips and decreased range of motion, tenderness, and spasm in the lumbar back. AR 700.

On May 15, 2018, the Plaintiff again treated with Dr. Salah who diagnosed psoriatic arthritis for the first time. AR 719. The Plaintiff reported worsening pain to her hands, hips, and back; stiffness in the morning; swelling of hands from time to time; and difficulty holding a pen and writing. AR 720. She reported her psoriasis was acting up on her hands, elbows, and scalp. *Id.* On examination, Dr. Salah found pain with flexion of the hips and psoriatic pustular/plaque lesions on the elbows and scalp, worse compared to the last examination. AR 723. Dr. Salah wrote: "Her psoriasis is flaring and it seems like her joint issues are related, running diagnosis is psoriatic arthritis. Will start Enbrel . . . ." AR 719.

On October 4, 2018, the Plaintiff was seen by Dr. Salah. AR 753. Enbrel had been denied by insurance, and Lyrica was refilled. *Id.* Dr. Salah again wrote: "Her psoriasis is flaring and it

seems like her joint issues are related, running diagnosis is psoriatic arthritis." *Id.* The diagnoses were polyarthralgia and psoriatic arthritis. AR 754. The Plaintiff reported pain in her hands and back, and her skin disease was flaring. *Id.* On examination, the Plaintiff had pain with flexion of the hips but normal range of motion and no edema, tenderness, or deformity. AR 756. She also had psoriatic pustular/plaque lesions on the elbows and scalp, worse compared to the last examination. AR 757.

On January 1, 2019, the Plaintiff presented to Dr. Salah with joint pain all over and a rash on her hands. AR 807. Dr. Salah again found, "Her psoriasis is flaring and it seems like her joint issues are related, running diagnosis is psoriatic arthritis." *Id.* They were awaiting the start of Enbrel. *Id.* Dr. Salah noted that the Plaintiff's pain had not improved and that her rash was persistent. AR 808. The Plaintiff did not tolerate a higher dose of Lyrica. *Id.* On review of systems, she was positive for back pain, joint pain, myalgias, and neck pain. AR 810. On physical examination, she had normal range of motion but had pain with flexion in the hips. AR 811. She also had pustular/plaque lesions on the elbows and scalp, worse compared to the last examination. *Id.* She was given a depo-medrol injection for her psoriatic arthritis. AR 808.

**B.     Opinion Evidence**

*1.     State Agency Reviewing Physicians*

On February 26, 2018, state agency reviewing physician Dr. Ruiz provided an initial physical residual functional capacity assessment for the original onset date of December 31, 2014, based on the evidence through December 2017. AR 102–04, 106–08. Dr. Ruiz opined that the Plaintiff has an RFC for light work with occasionally lifting 20 pounds; frequently lifting 10 pounds; standing/walking six hours in an eight-hour workday; sitting six hours in an eight-hour workday; and unlimited pushing and pulling (subject to the lifting/carrying restrictions) and the

additional limitations of occasionally climbing, balancing, stopping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; and avoiding concentrated exposure to hazards such as machinery and heights. AR 106–07. As a result, the Plaintiff's claims were denied at the initial level. AR 113, 114.

The Plaintiff amended her alleged onset date from December 31, 2014, to March 6, 2018. AR 250. On May 5, 2018, the Plaintiff sought reconsideration because not all of her doctors' opinions were included in the original decision, her medications had changed, and her condition had worsened; the Plaintiff also submitted additional evidence. AR 157.

On reconsideration, the disability determination form lists the approximate date of the change in the Plaintiff's condition as January 1, 2018, which was based on the Plaintiff's report of worsening pain in her hips, no improvement in daily activities, and an increase in joint pain. AR 116, 132. There is also a reference to the Plaintiff's treatment with Dr. Salah, whom the Plaintiff reported at that time as believing that she had rheumatoid arthritis or lupus. AR 116, 132. The determination form still listed the Plaintiff's alleged onset date as December 31, 2014. AR 116, 117, 132, 133. State agency reviewing physician Dr. Whitley's reconsideration analysis noted his review of Dr. Salah's May 15, 2018 treatment record, noting: "05/15/18 - running dx of psoriatic arthritis. Difficult to hold and [sic] pen. Swelling of hands at times." AR 118, 121, 134, 137. On August 17, 2018, Dr. Whitley reaffirmed the same RFC given by Dr. Ruiz for light work with postural and environmental limitations. AR 123–26, 139–142. The Plaintiff's claims were then denied on reconsideration. AR 147, 148.

2.   *Dr. Salah, the Plaintiff's Treating Rheumatologist*

On October 4, 2018, Dr. Salah completed a Medical Assessment of Ability to Do Work-Related Activities (Physical). AR 746–48. Dr. Salah opined that the Plaintiff could lift/carry up

9

to ten pounds occasionally and less than five pounds frequently due to inflammatory arthritis; could walk/stand a total of one hour in an eight-hour work day and stand/walk without interruption for half an hour due to inflammatory arthritis; could sit for a total of half an hour in an eight-hour work day due to inflammatory arthritis; could never climb, balance, stoop, crouch, kneel, or crawl and could occasionally bend and twist due to inflammatory arthritis. AR 746–47. Dr. Salah explained that the Plaintiff's mobility was limited in reaching, handling, and pushing/pulling due to inflammatory arthritis. AR 747. Dr. Salah opined that the Plaintiff should have environmental restrictions for heights, moving machinery, chemicals, humidity, and vibrations, explaining that psoriasis is worse with chemicals; heights are not safe because of poor balance; and her inflammatory arthritis is worse with the above environmental factors. *Id.* He also opined that she would require periods of reclining due to inflammatory arthritis. AR 748.

On May 10, 2019, Dr. Salah completed a Physical Residual Functional Capacity Medical Source Statement. AR 815–19. He opined that the Plaintiff's psoriasis was worse with chemicals and that her balance not good. AR 815. When asked to describe her pain, he wrote: "multiple joints, sharp, achy, immobility, change in weather, severe stiffness, daily impact." *Id.* He listed her significant clinical findings as skin disease, swelling joints, deformities. *Id.* Dr. Salah opined that the Plaintiff could occasionally lift/carry up to ten pounds, could not walk a city block without rest or severe pain, and could not climb steps at a reasonable pace without the use of a handrail. AR 815–16. He opined that she has problems with balance when ambulating as well as problems with stooping, crouching, and bending. AR 816. Dr. Salah opined that, in an eight-hour workday, the Plaintiff would need to lie down two hours, could stand/walk two hours, could sit less than one hour, and could use her hands, fingers, and arms and do keyboarding ten percent of

the workday. AR 816–17. Dr. Salah opined that, because of her impairments, the Plaintiff would be off task over thirty percent of the time and would miss three days of work per month. AR 818.

**C.     The ALJ's Evaluation of the Opinion Evidence to Formulate the Plaintiff's RFC**

The RFC is a measure of what an individual can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

In reviewing a disability claim, an ALJ has an obligation to evaluate every medical opinion and explain the persuasiveness of the opinion. *See* 20 C.F.R. § 404.1520c(a), (b). Medical opinions are evaluated using the following factors: (1) supportability, which means how well the objective medical evidence and supporting explanations presented by a medical source support the opinion; (2) consistency, which means how consistent the medical opinion is with the evidence from other medical sources and nonmedical sources; (3) relationship with the claimant, which considers the length of a treatment relationship, the frequency of examinations, the

purpose of a treatment relationship, the extent of a treatment relationship, and whether there is an examining relationship; (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the medical opinion. *Id.* § 404.1520c(c)(1)–(5). The most important factors for evaluating the persuasiveness of a medical opinion are supportability and consistency. *Id*. § 404.1520c(a), (b)(2). Therefore, the ALJ must explain how the ALJ considered those two factors in making the disability decision. *Id*. § 404.1520c(b)(2). However, the ALJ may, but is not required to, explain how the ALJ considered the remaining three factors. *Id.*

The Plaintiff argues that the ALJ erred both in evaluating the opinion of Dr. Salah under this framework and by relying instead on the opinions of state agency reviewing physicians who gave their opinions based on her earlier onset date and without the benefit of Dr. Salah's diagnosis and treatment records. The Court considers each argument in turn.

The ALJ found Dr. Salah's opinions unpersuasive because Dr. Salah essentially limited the Plaintiff to sedentary work based on the limitations to lifting no more than five to ten pounds, standing/walking for only two hours in an eight-hour day, and sitting less than half an hour "due to her arthritis." AR 26. The only reason given by the ALJ was that this opinion is "inconsistent with the doctor's own treatment records that reported normal findings, with full range of motion and no edema, tenderness, or deformity, as well as generally normal findings reported throughout the remaining record." *Id*. (citing B9F/34; B10F/5; B14F/4–5; B16F/28).

However, this is not an accurate recitation of the cited records. The record at B9F/34—the February 12, 2018 treatment record of Dr. Zabaneh, the Plaintiff's general practitioner—shows a finding of no edema; however, Dr. Zabaneh did find "decreased range of motion, decreased strength and tenderness" in both the right and left hips, although no bony tenderness and no crepitus, and found "decreased range of motion, tenderness and spasm" in the lumbar

back, although no bony tenderness. AR 700. While the ALJ is correct that Dr. Salah's musculoskeletal exams at B10F/5 (5/15/2018), B14F/4–5 (10/4/2018), and B16F/28 (1/9/2019) show normal range of motion and no edema, tenderness, or deformity, the ALJ fails to discuss the findings of "pain with flexion of the hips" on each examination. AR 723, 756, 811. Each record also reports "psoriatic pustular/plaque lesions on elbows and scalp, worse compared to last examination." AR 723, 757, 811. In addition, on review of systems, the Plaintiff reported back pain, joint pain, myalgias, and neck pain, with her pain getting worse with each visit. AR 722, 754, 756, 807, 810.

While the ALJ noted these favorable findings by Dr. Salah earlier in the decision, the ALJ ignored them when considering whether Dr. Salah's opinions were consistent with his own treatment records. *Compare* AR 24, *with* AR 26. Moreover, the fact that the ALJ ignored Dr. Salah's examination findings of pain with flexion of the hips is significant as to the difference in walking, standing, and sitting limitations in the RFC for sedentary work given by Dr. Salah compared with the RFC for light work given by the state agency reviewing physicians.

In addition, Dr. Salah's treatment records indicate that the Plaintiff's psoriasis was "flaring" and "it seems like her joint issues are related, running diagnosis is psoriatic arthritis." AR 719, 753, 807. The Plaintiff reported to Dr. Salah that she suffers joint pain, stiffness, and swelling of her hands from time to time, and Dr. Salah confirmed psoriasis on her hands, elbows, and scalp and, on examination, found pain on flexion of the hips. AR 720, 723. Psoriatic pustular/plaque lesions were observed on the elbows and scalp and continued to be documented as worsening. *See* AR 723, 730, 757, 788, 796, 804. Throughout the RFC forms, Dr. Salah attributed the restrictions to her inflammatory arthritis, which is consistent with and supported by his treatment records. AR 746–48, 816.

Thus, as argued by the Plaintiff, because Dr. Salah's opinion is not inconsistent with his treatment records and has support in the records, the additional factors of § 404.1520c(c) support affording Dr. Salah's opinion more deference. These factors include that he is a rheumatologist specializing in the Plaintiff's impairment of psoriatic arthritis, he is her treating physician who had seen her on numerous occasions over a period of time, and he reviewed laboratory testing regarding her ANA panel and inflammatory markers. The ALJ's analysis for finding Dr. Salah's unpersuasive is not supported by the records cited.

Next, the Plaintiff argues that the ALJ's error in assessing Dr. Salah's opinion is compounded by the ALJ's decision finding the state agency reviewing physicians' opinions persuasive. *See* AR 25. The Court agrees. The first state agency reviewing physician, Dr. Ruiz, gave an opinion on February 26, 2018, assigning the Plaintiff an RFC for light work with certain postural and environmental restrictions based solely on the Plaintiff's history of treatment for low back pain, bipolar disorder, and a motor vehicle accident. AR 102–08. This opinion was given before both the Plaintiff's amendment of the onset date to March 6, 2018, *see* AR 142, as well as Dr. Salah's new diagnosis of psoriatic arthritis on May 15, 2018.

On August 17, 2018, Dr. Whitley gave an opinion on reconsideration. The record shows that he was aware of Dr. Salah's May 15, 2018 treatment record and diagnosis. AR 118, 121, 134, 137. However, Dr. Whitley's analysis noted only the "running dx of psoriatic arthritis" and that the Plaintiff found it difficult to hold a pen and had swelling of the hands at times. AR 121, 137. There is no indication that Dr. Whitely considered the Plaintiff's reports of increasing pain and stiffness, the medication prescribed for her psoriatic arthritis, and Dr. Salah's examination finding of pain with flexion of the hips. Thus, it is not clear whether Dr. Whitely fully reviewed the May 15, 2018 record, especially considering that he affirmed the same RFC given initially by

14

Dr. Ruiz. In addition, the onset date on the disability determination form on reconsideration was still listed as December 31, 2014, as opposed to the new onset date of March 6, 2018. Finally, Dr. Whitley did not have the benefit of Dr. Salah's subsequent treatment records in October 2018 and January 2019 or Dr. Salah's opinions in October 2019 and May 2019.

The Court further notes that, at step two of the sequential evaluation, the ALJ found the Plaintiff's psoriatic arthritis to be severe impairment, indicating a diagnosis in November 2017. AR 21 (citing B9F/9, B10F/1). However, the first record cited, B9F/9, dated November 2017, lists only an assessment of psoriasis and not psoriatic arthritis. AR 675. The first record of a diagnosis of psoriatic arthritis is not until May 15, 2018, by Dr. Salah in record B10F/1. *See* AR 719. Given the timing of Dr. Ruiz's opinion in February 2018 and the ALJ's misstatement that the Plaintiff's psoriatic arthritis was noted in November 2017, it is unclear whether the ALJ may have mistakenly believed that Dr. Ruiz was aware of the diagnosis.

The fact that new medical records come into the record after the state agency reviewing physician's opinion is not necessarily unusual or problematic on its face. *See Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017) ("If an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." (citing *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004))). However, "[a]n ALJ must not rely on a physician's assessment 'if later evidence containing new, significant medical diagnoses reasonably could have changed' the physician's views." *Pavlicek v. Saul*, 994 F.3d 777, 783–84 (7th Cir. 2021) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)); *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (finding that the ALJ erred by not adequately explaining why the opinions of a state agency psychiatrist and psychologist were entitled to greater weight when they did not have access to subsequently created medical records from a treating psychiatrist).

Here, it is possible that the state agency doctors could have changed their opinions that the Plaintiff had the residual functional capacity for light work if they had considered Dr. Salah's running diagnosis of psoriatic arthritis and repeated examination findings of pain with flexion of the hips as well as the Plaintiff's progressively worsening pain. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." (quoting *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014))); *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021). This is not a case where the new evidence shows only a mild change in the claimant's condition such that the new evidence would not have changed the state agency reviewing physician's opinions. *See, e.g.*, *Keys*, 679 F. App'x at 480–81 (finding no error in the ALJ's reliance on the state agency physician's opinions where the new MRIs showed only "mild" changes and where the claimant provided no "evidence that the reports would have changed the doctors' opinions"); *Bond v. Berryhill*, No. 16 C 2018, 2017 WL 1398656, at *3 (N.D. Ill. Apr. 18, 2017). As a result, the Court cannot trace the logic of the ALJ's reasoning in finding Dr. Salah's opinions unpersuasive and the opinions of Dr. Ruiz and Dr. Whitley persuasive. *See Stage*, 812 F.3d at 1125. Remand is required for proper consideration of the opinion evidence under 20 C.F.R. § 404.1520c(c).

Finally, when considering the Plaintiff's subjective symptoms on remand, the ALJ will have an opportunity to reconsider the limitations on the Plaintiff's performance of daily activities, especially in light of the Plaintiff's pain related to her psoriatic arthritis. *See Craft*, 539 F.3d at 680 (finding that the ALJ erred when the "ALJ ignored [the claimant's] qualifications as to *how* he carried out" his daily activities). *See, e.g.*, AR 51, 60, 69, 284, 305.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 19] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on December 7, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT